HENRY VAN SCHAICK and others, executors of Myndert Van Schaick, deceased, *vs.* THE THIRD AVENUE RAILROAD COMPANY.

A lease taken by A. in trust for a corporation thereafter to be formed, creates, on the formation of such corporation, and upon its receiving an assignment of such lease, with knowledge of the terms upon which it was executed and received from the lessor by A., a liability in equity, on the part of such corporation, to pay the rent to the lessor; and such liability cannot be avoided by a transfer of the lease, by the corporation, to B.

THE object of the action was to compel the defendant, as the equitable lessee, to perform the covenants contained in a lease of thirty-three lots of land at the corner of Sixty-first street and Third avenue, in the city of New York, made by Myndert Van Schaick, the original plaintiff, to Henry Van Schaick.

The action was originally tried before the special term held

by Justice DAVIES, in the city of New York, on the 15th day of March, 1859, and resulted in a judgment for the plaintiff. An appeal was taken by the defendant to the general term, where a new trial was ordered. A second trial took place before Mr. Justice MULLIN, in December term, 1863, when judgment was again given for the plaintiff. The appeal is from that judgment. The original plaintiff having died, the action was continued in the name of his executors.

The facts shown in the case on the last trial were as follows:

In January, 1853, the city of New York made a grant to thirteen persons of the right to construct and operate the Third Avenue Railroad. Three stage companies, the Pearl street, Harlem and the Bullshead lines were then running on the Third avenue. The grant was obtained through their influence, with the understanding that their stage property was to be purchased by the grantees. The Pearl street line then had a lease for ten years of the property in question from Myndert Van Schaick, the original plaintiff. On the 4th of January, 1853, an unincorporated association was formed of the grantees, including the proprietors of the three stage lines, under the name of the Third Avenue Railroad Company. The articles of partnership are set out at page 34. The proprietors of the three stage lines insisted upon having a definite contract with the association for the purchase of their lines, and on the 28th of April, 1853, a resolution was passed unanimously to purchase the property of each line. The resolution provided for the purchase, from Dewey, Dingledein & Co., the proprietors of the Pearl street line, of their lease of the thirty-three lots, with the buildings thereon. The next day, Dewey, Dingledein & Co. made a contract accordingly. Between that time and the 16th of August, 1853, the members of the association, at its meetings, had discussed the propriety of forming a corporation from the association, where the members of the association should have the same rights, and escape personal liability beyond the amount they held in it. And the propriety of having a lease, from Myndert Van

Schaick, of the thirty three lots held under the lease to Dewy, Dingledein & Co. was also discussed. He was willing to give such a lease. A resolution was thereupon offered in the association on that day, that it was expedient that a lease for fifteen years, from July 9, 1853, be executed " by Myndert Van Schaick to Henry Van Schaick, to be held by him for the benefit of this company, *or such other company as may be formed to carry on the Third Avenue Railroad, shall, at any time hereafter, have a right to demand of him ;*" and " that this company, and such other company as may be hereafter so formed in its stead as above, will and do assume" the covenants, &c. This resolution, after lying over one day for consideration was, on the 17th of August, 1853, passed unanimously, every member of the association voting. Henry Van Schaick was not, at the time, a member of the association. It was in the discussion said that a corporation should be formed under the general railroad act, and that the association should sell out to it, and that if the corporation were formed, " *this lease was to be for the benefit of the corporation, and the corporation was to have it from Henry Van Schaick the same as the association..*" Among the suggestions, it was said that it would " *be for the benefit of the partnership and* THE SUCCEEDING CORPORATION, that the title should not be placed in Dewey, Dingledein & Co., but in some person to hold as trustee ;" and Henry Van Schaick. was, therefore, selected as the trustee. In pursuance of the resolution, a new lease was made by Myndert Van Schaick to Henry Van Schaick of the lots above mentioned, bearing date April 16, 1853, and acknowledged August 18, 1853. At the time of its execution, there was an agreement executed on behalf of the association, by its president, with Henry Van Schaick, in pursuance of the resolution of August 17, 1853. This agreement declares distinctly that the lease from Myndert Van Schaick to Henry Van Schaick, " *though absolute on its face, was made to the party of the first part,* (Henry Van Schaick,) *solely for the benefit of the said parties of the*

*second part, and of such other company as may be thereafter formed to succeed them in their business,"* &c. ; and the company agreed to assume, and that it did assume, the performance of its covenants. It was always kept in an iron safe, belonging first to the association, and then to the corporation.

On the 8th day of October, 1853, the corporation was formed under the same name which the unincorporated association bore — the Third Avenue Railroad Company. The corporation consisted, with one exception, of the members of the unincorporated association. The unincorporated association, by deed dated the same day, conveyed to the corporation all its property except a portion reserved to pay certain of its debts, but including the thirty-three lots in question. It was a sale from the association as an unincorporated association to a corporation consisting of the same persons. The assignment, in terms, conveyed to the corporation *all the leases* belonging to the association. It was a simple carrying out of the previous plan for converting the association into a corporation. The unincorporated association had been in the possession of the thirty-three lots from the time its road was completed, under the lease to Dewey, Dingledein & Co., the Pearl street line. It continued in possession when the lease was made from Myndert Van Schaick to Henry Van Schaick as trustee for the association; and when the association became a corporation, the possession continued in the corporation, and the corporation went on paying the rent to Myndert Van Schaick. This possession continued until 1858, when the corporation assigned the lease to Searles, after the formation of the corporation, and on the 7th of November, 1853 ; and it being in possession of the thirty-three lots of land, Henry Van Schaick assigned to it the lease he held as trustee from Myndert Van Schaick.

Myndert Van Schaick had held in his own name leases of three other pieces of real estate for the association ; and on the same day that Henry Van Schaick made his assignment

to the corporation, Myndert Van Schaick assigned to the corporation two of the leases ; the third he, at the request of the association, transferred to other persons to pay debts of the association.

On the formation of the corporation, as above stated, all the persons interested in the association, except one, became and were corporators ; and the corporation succeeded to all the property, rights, duties and obligations of the association, and went on with its business without interruption, "with the same drivers and same everything."

From the time of the execution of the assignment of the declaration of trust from Henry Van Schaick and the assignment of the lease to the corporation, those papers, respectively, were kept in the safe of the association, and then of the corporation.

When the Central Park was opened, the corporation paid the assessment upon the lots, and when an award was made for part of the lots taken for widening Fourth avenue, Myndert Van Schaick paid to the corporation its proper proportion of the moneys.

On the 1st of July, 1854, the corporation made a mortgage to J. Philips Phœnix and Cornelius W. Lawrence, for $150,000, and among the mortgaged property included the thirty-three lots leased, together with the depots, buildings, and improvements thereon. The mortgage recites an agreement to execute and deliver to the mortgagees' trustees, as security for bonds to be issued, its railroad, "with all and singular the *leases*, depots, stables and other buildings, cars, &c. property and appurtenances of the said railroad, as hereinafter mentioned," and then includes in the description : " A certain indenture of lease made by Myndert Van Schaick to Henry Van Schaick, dated the 16th August, 1853, duly recorded, with the demised premises therein mentioned, containing thirty-three lots of ground on Sixty-first street and on Fourth and Lexington avenues, together with the depots, buildings and improvements thereon erected, with the rights,

privileges and appurtenances to said described premises belonging ; and also all the estate, right, title, interest, term of years yet to come, and unexpired property, possession, claim and demand whatsoever, as well in law as in equity, of the said Third Avenue Railroad Company, in and to the said demised premises."

January 13th, 1858, the corporation sold the lease to Samuel Searles for $5. The buildings then upon it had cost several thousand dollars. Searles was one of the car-drivers employed by the corporation at $1.50 per day. He sold the buildings for $300, and never paid any rent. He owned, at the time, very little property, and the president, who made the sale to him, did not know that he had any property ; and he states that the sale was made to him to get rid of the liability for rent.

There was no contradiction of any of the foregoing facts.

The conclusions of law of the justice before whom the action was tried, were as follows :

" That the defendants are subjected to the burthens of said lease, certainly to the extent of relieving and indemnifying Henry Van Schaick, to the extent of his liability to the plaintiff, and such right to indemnity of said Henry Van Schaick is the property of the plaintiff.

That in equity the plaintiff is entitled to enforce against the defendants the duties and covenants in said lease contained, they having accepted the same as made for their benefit and advantage, and having used and occupied the premises under the said lease as lessees, and not otherwise.

That the plaintiff is entitled to recover against the defendants the amount of unpaid rents, from the first day of February, 1858, quarterly, with interest thereon.

That the defendants pay, discharge and satisfy all the unpaid taxes and assessments on the lands described in said lease.

That said defendants pay the rent already due, and the rent to become due and payable upon said lease as the same shall become due and payable, and also pay and discharge

seasonably all taxes and assessments which have been, or may hereafter be levied, assessed or charged upon said premises during the term in said lease expressed."

Judgment having been entered by the plaintiff on the said decision, the defendants appealed.

*Robt. B. Potter*, for the appellants.

*William Tracy*, for the respondent.

*By the Court*, JAMES C. SMITH, J. When this case was before the court on the former appeal, the judgment theretofore rendered in favor of the plaintiffs' testator was reversed, and a new trial was ordered, by a divided court. The majority of the court were of opinion that as the case then stood, there was no evidence of an adoption by the defendants, express or implied, of the liability of the original *cestui que trust* to pay the rent reserved by the lease, and on the ground above they concurred in a judgment of reversal. That point is therefore the only one adjudged by the decision.

On the second trial, which is now under review, considerable testimony was given, in addition to that appearing on the first, and the learned justice before whom the last trial was had, found as matter of fact that the defendants, on becoming incorporated, impliedly agreed to pay the rent, and perform all the covenants of the lease, and assumed the position of lessees, and he decided that in equity the plaintiffs are entitled to enforce against the defendants the covenants of the lease, and the duties created by them.

The counsel for the appellants contends that even as the case now stands, there is no evidence warranting the conclusion of fact above stated ; and that upon no ground are the defendants liable to pay rent accruing after their assignment of the lease to Searles, and their transfer to him of the possession of the premises. As it will not be difficult to deduce the defendants' liability from the alleged agreement, if the latter be established, the case is substantially narrowed down

to the question whether there is sufficient evidence to support the finding of fact.

I am of opinion that the testimony satisfactorily establishes the implied agreement found by the judge at special term. It is proved, beyond doubt, that the lease for the term of fifteen years from 9th July, 1853, although executed to Henry Van Schaick, nominally, was in fact so executed at the request of the incorporated association then existing, and known as "The Third Avenue Railroad Company," and for the benefit of said association, and of such other company as should be formed thereafter to carry on the railroad then owned by the association ; and that as between Van Schaick and the association, the former was a mere trustee, and the latter was to pay the rent to Myndert Van Schaick, the lessor. This is shown by the testimony of Reynolds, the declaration of trust and the resolutions of April 28th and August 17th, 1853.

It also appears from the latter resolution referred to, and the written contract executed in pursuance of it, that the association expressly agreed with Henry Van Schaick that they and the said company would assume, and the association did thereby assume, the performance of all the covenants in the lease which, by its terms, were to be performed by him.

It next appears that the defendants were created a corporation on the 8th October, 1853, under the provisions of the general railroad act, by the joint action of all the members of the association save one, for the purpose of maintaining, operating and finishing the construction of said railroad. The action of the members of the association, in forming such corporation, was authorized by the articles of association, which provided that the members might incorporate themselves, under the general railroad act, whenever two thirds in interest should require it. The same name by which the association had been known was given to the corporation. The association transferred to the corporation, on the day it was organized, the bulk of the property of the

association, including the lease and premises in question. The corporation at once accepted the property, entered upon the premises, and engaged in and continued the business of operating the railroad. On the 7th November, 1853, it received from Henry Van Schaick his assignment of the lease, and it used the premises and paid the rent from the time of its organization until the transfer to Searles, in January, 1858. In June, 1854, the corporation mortgaged the lease in question, and the premises demised by it, to secure the bonds of the corporation issued for money then borrowed, to the amount of $150,000.

The important circumstance also appears, that all the transactions of the corporation, above mentioned, were had with full knowledge, on the part of their president and of a majority of their directors, of all that had previously occurred respecting the lease, as above stated, including the fact that the association had agreed, in behalf of itself and *of the company which should succeed it*, to perform the covenants in the lease.

These facts and circumstances clearly justify the conclusion that the defendants adopted the engagements made in their behalf by the association which they succeeded, and that when they entered into possession they were regarded and treated by all parties, themselves included, as the absolute owners of the leasehold estate remaining, and as bound to pay the stipulated rent to the end of the term created by the lease. On the transfer to the corporation, the association or partnership was practically terminated. Thenceforth all parties evidently regarded the liability of the association and of its members as such, for rent accruing upon the lease, as at an end. The corporation intended to take, and it did take, the place of the association as *cestui que trust* and lessee, and assumed all the liabilities of the association in respect to the lease.

There can be no doubt that under the original arrangement

the lessor might have compelled the association, in a court of equity, to perform the covenants in the lease, although the association was not named in. the lease, as a party to it. His executors have now the same right against the defendants, they having adopted the agreement made by the association. Although the agreement which the defendants adopted was made with Henry Van Schaick, yet as they thereby became liable to pay rent to the testator of the plaintiffs, the latter may enforce the obligation. (20 *N. Y. Rep.* 268.)

The case is not the ordinary one of a naked assignment by an original lessee to a subtenant, and in the view above presented, it is clearly distinguishable from *Walters* v. *Northern Coal Mining Company*, (5 *DeGex, McN. & G. p.* 629,) cited by the appellants' counsel.

For these reasons I am of opinion that the judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, April 3, 1867. *Leonard, Ingraham* and *J. C. Smith*, Justices.]