(58 App. Div. 473.)

### FLEISHER v. FARMERS' LOAN & TRUST CO.

(Supreme Court, Appellate Division, First Department.   March 22, 1901.)

RAILROAD MORTGAGE—BONDS—ISSUE—TRUSTEE'S AUTHORITY.

    A railroad mortgage provided that the proceeds of the bonds secured thereby might be paid into the trustee's hands, and by it disbursed, or that the bonds might be delivered in specie to the mortgagor on receipt of a statement of the purposes to which the proceeds of such bonds were to be applied, in which latter event the trustee was not bound in any way to look to the application of the proceeds of the sale of the bonds. The trustee certified and issued to the mortgagor all the bonds specified in the mortgage on receiving statements that the purposes for which the bonds were to be appropriated and used were the construction of the line, the discharge of the railroad company's obligations, and for other purposes of its organization. *Held*, that such statements, though not specifically describing the purposes for which the proceeds of the bonds were to be applied, authorized the trustee's action in issuing them.

Appeal from special term, New York county.

Action by Benjamin W. Fleisher against the Farmers' Loan & Trust Company for failure to comply with the terms of a mortgage. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The action was brought against a trustee of a railroad mortgage. The defendant, in its answer, sets up that whatever cause of action, if any, is stated in the complaint, was barred by the 6 or 10 years' statutory limitation. The plaintiff was required by order to reply to the answer, which he did by setting up, in substance, that 20 years had not elapsed since the cause of action arose, and that the action, being upon a sealed instrument, was not barred by the statute of limitations. The defendant demurred to the reply, and the demurrer was overruled, and the judgment appealed from entered. Omitting reference to merely formal matters of the plaintiff's right to stand in court and of the organization of the several corporations referred to in the complaint, its important allegations are: That the Willamette Valley & Coast Railroad Company received authority to construct and operate a line of railroad in the state of Oregon, and received a grant from that state of certain lands and the right to become the owner of the stock of two other corporations of the state of Oregon; the land amounting to about 850,000 acres; the land and stocks to be acquired by the Willamette Valley & Coast Railroad Company upon the payment of $600,000. That the Oregon Pacific Railroad Company had authority from the state of Oregon to construct and operate a line of railroad from a point in the state of Oregon to a point in the state of Idaho, and to construct and operate the railroad of the Willamette Valley & Coast Railroad Company, and by lease, consolidation, or otherwise to constitute such line of railroad a part of the line of the Oregon Pacific Railroad Company, and to construct and otherwise acquire water craft, and operate the same on the ocean between certain points. That the Oregon Pacific Railroad Company executed and delivered to the defendant herein, the Farmers' Loan & Trust Company, 15,000 first mortgage land grant sinking fund gold bonds,

each payable to the bearer, and each for the sum of $1,000, with interest payable at certain times, the aggregate of such bonds being $15,000,000. That such bonds were executed and delivered to the Farmers' Loan & Trust Company, and as collateral to such bonds the Oregon Pacific Railroad Company and the Willamette Valley & Coast Railroad Company, on or about October 1, 1880, to secure the application of the proceeds of the sale of the bonds and the payment of the interest and principal thereon as the same should become due. executed and delivered to the Farmers' Loan & Trust Company a first mortgage or trust deed, covering "all and singular their and each of their lands, railroads, property, real and personal, and franchises, whatsoever and wheresoever, then owned or thereafter to be acquired, in trust for the persons who should become the holders of said bonds, with the stipulations, covenants, and conditions therein contained, * * * so as to secure to them and for their benefit as well the due and proper application of the proceeds of said bonds to the payment of the said $600,000 upon, and the acquisition of an unincumbered title to, the said land grant, * * * and the construction and equipment of the proposed line of railroad in said mortgage described and conveyed. as the payment of the interest and principal thereof as and when the same should become due." That the "said Farmers' Loan & Trust Company, for the purpose of signifying its acceptance of the trust, and to secure to the persons who should become the holders of the said bonds the benefit of the security of the stipulations, covenants, and conditions therein contained," did join in said mortgage under its hand and seal. That on October 1, 1880, neither the Oregon Pacific Railroad Company nor the Willamette Valley & Coast Railroad Company had constructed or owned any line of railroad whatsoever, and neither of said railroad companies had any property of value which passed under or became bound by the lien of the said mortgage or deed of trust, except the franchise and land grant of the Willamette Valley & Coast Railroad Company, and its right by payment of the sum of $600,000 to become the owner of the shares of stock above referred to and the land granted. That the Farmers' Loan & Trust Company, by the acceptance of the trust, and for the benefit of the plaintiff and those who should become owners of the bonds referred to, covenanted, in substance and legal effect, that it would retain the custody of the whole issue of bonds, or the proceeds of the sale or other disposition of the same, and pay or deliver the same to the Oregon Pacific Railroad Company upon the request in writing of the said Oregon Pacific Railroad Company, or its president and executive committee, specifying the purpose or purposes, in connection with the payment of said sum of $600,000, and the work of such construction and equipment for which said bonds, or the proceeds thereof, were to be appropriated or used, and then only at the rate of 25 bonds, or the proceeds thereof, per mile of railroad constructed and equipped, or in course of construction and equipment, from time to time as and when the work on the same progressed; and especially that out of the first 3,250 of said bonds, or the proceeds thereof, the said incumbrance of $600,000 upon the said land grant of about 850,000 acres should be satisfied, and 130 miles of said railroad as projected should be built, constructed, and equipped, and that the surplus of such bonds, or the proceeds thereof, should be applied or used for the acquisition of water craft. That the Farmers' Loan & Trust Company covenanted with the Willamette Valley & Coast Railroad Company and the Oregon Pacific Railroad Company, for the sole use and benefit of the plaintiff and such other persons who should become the holders of the bonds purporting to be secured thereby, that it, the Farmers' Loan & Trust Company, would not certify and issue and deliver to the said Oregon Pacific Railroad Company, or cause or permit to be issued by it, the said 15,000 bonds, or any of them, except as thereinbefore stated; and that the Farmers' Loan & Trust Company would use all reasonable diligence to secure the due and proper application of the bonds, or the proceeds thereof, to the purpose and purposes aforesaid, and that it would only pay over the proceeds upon the written request of the railroad company and its president and executive committee, accompanied with a written statement specifying the purpose or purposes connected with the satisfaction of the debt of $600,000 necessary to perfect the title to and lien of said mortgage upon said land grant, and the work of construction and equipment of the 130 miles of rail-

way; and that the trust company would use all' reasonable diligence to. obtain, secure, and enforce out of the first 3,250 bonds, or the proceeds thereof, in the first place to be issued or delivered or paid to said Oregon Pacific Rail-road Company, the payment by that company of $600,000 upon the land grant, and, in the second place, the building, constructing, and equipping of the first 130 miles of projected railroad, and that the surplus only, if any, should be used or applied by said railroad company to the acquisition of water craft, to the end that the said bonds and the proceeds thereof should be used and applied only to and for the purchase, construction, and enhancement of the property upon which they purported to be secured, and in the manner in said mortgage particularly specified. The complaint then proceeds to set forth a breach of an alleged covenant by the Farmers' Loan & Trust Company, and to aver that it did not keep and perform its covenant and agreement, but, hav-ing had deposited with it all the bonds secured by the mortgage, it did not require nor receive from the Oregon Pacific Railroad Company a statement of the purposes for which the bonds were to be appropriated or used as in and by said mortgage required, or any statement in writing other than the dec-laration that the purposes for which said bonds are to be appropriated or used are the purchase of necessary materials and construction of its lines, and the discharge of its obligations, and for other purposes of its organization; that, without requiring or receiving any other statement, the defendant, on or about May 31, 1881, certified and delivered to the Oregon Pacific Railroad Com-pany, to be issued and sold, 3,250 of said bonds, although at that time what-ever right the Willamette Valley & Coast Railroad Company had to acquire the lands had expired, which the defendant well knew, and, as a consequence, parting with this amount of bonds by the defendant was a breach of cov-enant. The complaint then sets forth the delivery by the defendant to the Oregon Pacific Railroad Company of other amounts of bonds at different times, without receiving any other statement of the purpose for which the bonds appropriated were to be used, except such as are in the precise terms of the certificate or statement previously quoted. It then alleges that the Oregon Pacific Railroad Company was wholly insolvent, and fell into default in the payment of interest at a certain time; that the mortgage was foreclosed by the defendant, as the trustee thereof; and that upon the sale of the mort-gaged property prior liens exhausted all the proceeds of sale, and the plaintiff's bonds became worthless. It is further alleged that when the Farmers' Loan & Trust Company became a party to the mortgage, and executed the same, it assumed the duties thereby imposed upon it, and entered into the covenants and agreements therein contained, knowing and intending that all persons pur-chasing any of the bonds purporting to be secured thereby, including the plain-tiff, would rely upon the said trustee to enforce all the stipulations of the mortgage so as to secure the due application of the bonds to be issued under said mortgage, or the proceeds thereof, to the purposes therein mentioned, to wit, to the payment of the purchase money for said land grant, and to per-fecting the title thereto, and the lien of said bonds thereon, and to the acqui-sition, construction, and enhancement of the property upon which the said mortgage purported to be secured.

Annexed to the complaint is what purports to be a copy of the mortgage. It is executed by the Oregon Pacific Railroad Company, party of the first part, the Farmers' Loan & Trust Company, party of the second part, and the Willamette Valley & Coast Railroad Company, party of the third part. Its provisions important in the consideration of the case state the relations of the Willamette Valley & Coast Railroad Company with the Oregon Pacific Railroad Company, and they are substantially the same as stated in the com-plaint. A form of the bonds to be issued is incorporated in the body of the mortgage, and upon each bond were indorsed certain conditions; those ma-terial to the present discussion being as follows: "Fourth. That the party of the first part (that is, the Oregon Pacific Railroad Company) shall and will, and it hereby covenants and agrees to, apply the net proceeds arising from the sale of the bonds secured by this indenture in the first place to the liquidation and discharge of the herein-mentioned incumbrance, amounting to $600,000, or thereabouts, now existing upon the land grant known as the 'grant of the Willamette Valley & Cascade Mountain Wagon-Road Com-

pany,' and subsequently to the building, grading, and otherwise constructing the line of the said railroad, as the same may have been or may be surveyed and laid out, and for the full and complete furnishing and equipping of the said railroad, and the purchasing and procuring of locomotives, engines, cars, and other proper equipment and rolling stock, and other proper and suitable appurtenances for the said railroad, and the erection of depots, station houses, and such other buildings as may be suitable and proper for the same; and also for the purchasing, furnishing, equipping, and operating of such steamships, steamers, barges, ferryboats, and other water craft as may be suitable and proper for the carrying out of the purposes for which the party of the first part was incorporated, or any of them; and also for such other and further purposes as may enable the party of the first part to engage in the other enterprises and purposes for which it has been so incorporated; and, further, that the proceeds of the issue of the said bonds to the extent of three million two hundred and fifty thousand dollars of principal shall be applied, in the first place, to the satisfaction of the said incumbrance, and to the building, constructing, and equipping of the first one hundred and thirty miles of the said railroad from the ocean eastward; in case of surplus, to the acquiring of necessary water craft. Fifth. That the party of the first part shall and will, and it hereby covenants and agrees, after the said bonds have been duly executed by and on behalf of the party of the first part, to deposit the same with the party of the second part, to be certified and issued from time to time as the same may be sold or otherwise disposed of; and the said trustees may certify and issue any of said bonds at any time on the request of the party of the first part, or of its president, in writing, and the net proceeds which may be realized on the sale of the said bonds shall be paid over to and remain in the hands of the said trustee for the purpose above enumerated, and shall be paid out only on the written order or request of the executive committee of the board of directors of the party of the first part, or of a majority of the said committee, in which order or request the president or acting president of the party of the first part shall include a written statement or memorandum declaring the purpose or purposes for which the proceeds of the said bonds so ordered to be paid over are to be appropriated or used: provided, however, that in case the party of the first part shall desire to apply any of the said bonds for the purposes of its incorporation without converting the same into money, then and in that case it shall furnish the said trustee with a like written order or request of the said executive committee, or of a majority thereof, in which the said president or acting president shall join, which shall include a written statement or memorandum declaring the purpose or purposes for which the said bonds are to be appropriated or used, and in such case the said trustee shall certify, issue, and deliver the said bonds. It shall be the duty of the president and secretary of the party of the first part to furnish the said trustee with a written certificate, under the seal of the said corporation, of the names and residences of the persons constituting such executive committee, which certificate shall be conclusive evidence for the said trustee of the fact that the persons so named constitute and compose such executive committee, until it shall be notified in like manner of the appointment of other persons in their room and stead. Nothing herein contained shall be so construed as requiring the said trustee to inquire into the application of the funds or of the bonds which it may deliver over on the receipt of such orders or requests as aforesaid." It is provided in the mortgage (seventeenth clause) that the party of the second part (the defendant) and its successor or successors in the trust thereby created shall be responsible only for reasonable diligence in the management thereof. It appears by the complaint that all the bonds were issued directly to the Oregon Pacific Railroad Company, and that none of the proceeds thereof were retained or came into the hands of the Farmers' Loan & Trust Company.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Silas W. Pettit, for appellant.
David McClure, for respondent.

PATTERSON, J. Although the more immediate subject of discussion upon this appeal related to the cause of action attempted to be set up in the complaint being on a sealed instrument, and hence not barred by the statute of limitations, 20 years not having elapsed since the cause of action accrued, as set forth in the reply to the answer, nevertheless, the scope of the inquiry we must make is much broader, and extends to the ascertainment of the sufficiency of the complaint upon the plaintiff's own theory of the action. It is admitted that the demurrer to the reply searches the whole record, and that judgment must be rendered against the party who committed the first fault in pleading in matter of substance. The plaintiff claims—and, we think, correctly—that it was the intention of the pleader, in drafting the complaint, to declare upon a sealed instrument. There is no express covenant in terms made by the defendant, but it is apparent from the text of the instrument and the conditions indorsed upon the bond that there was an intention of the trust company to bind itself by contract under seal to require something to be done for the protection of the bondholders before it parted with bonds to the mortgagor. The argument of the plaintiff seems to be that there is a covenant, if not strictly an express one, with the bondholders,—one arising by implication of law enforceable by them, it being for their benefit; that, if there is an implied covenant, an action may be maintained (Booth v. Mill Co., 74 N. Y. 15), that made by the trust company with the Oregon Company being regarded necessarily as made for those who should become bondholders. The action. of covenant lies upon contracts under seal either for the nonpayment of money or for not doing or forbearing some other act. Grah. Prac. (2d Ed.) 84. It lies upon a covenant not expressed in words, but which will be implied from the terms of the sealed instrument (Kent v. Welch, 7 Johns. 258; Booth v. Mill Co., supra); and, while there is here no direct privity in terms between the plaintiff and other bondholders and the trust company, yet it is argued a covenanted duty manifestly intended for their benefit may be enforced by them (Van Schaick v. Railroad Co., 49 Barb. 409; Coster v. Mayor, etc., 43 N. Y. 399). But covenants are not to be inferred in a contract under seal, unless it clearly appears in the contract that the party against whom the implication is sought to be made has plainly intended to do the act in respect of which a covenant is sought to be implied. Hornbostel v. Kinney, 110 N. Y. 94, 17 N. E. 666. Technically speaking, the action of covenant at common law might not be brought against the Farmers' Loan & Trust Company on this instrument. There is no express covenant in terms made by the Farmers' Loan & Trust Company, and an implied covenant can be raised only out of or in connection with some express promise; but, nevertheless, the obligation assumed by the trust company to the bondholders arises out of the sealed instrument. It is not merely the ordinary obligation of a trustee to the persons for whose benefit a trust is created. It is a particular and precise obligation arising out of specific necessary requirements of the sealed instrument; and the practical question upon the record now before us is, what obligations were assumed by the defendant under the terms and conditions upon which it accepted and undertook the trust

created by the Willamette Valley & Coast Railroad Company and the Oregon Pacific Railroad Company? Whether an action in covenant at the common law would lie is not the question, but it is whether the duty and obligation of the Farmers' Loan & Trust Company to those who should become purchasers of bonds is one arising out of the terms of a sealed instrument. We think it clear that they have their origin in that instrument, and exist by virtue of it, and not otherwise. But the allegations of the complaint as to the claimed nature of that duty and obligation are controlled by the conditions and provisions of the mortgage, and, examining those conditions and provisions, and giving effect to all of them, so far as may be, we conclude that an action will lie only in the event of the Farmers' Loan & Trust Company having issued bonds to the Oregon Pacific Railroad Company without requiring the statement called for by the terms of the mortgage as a necessary preliminary to the right of the last-named company to receive the bonds. Express provision is made in the mortgage for disposing of the bonds in either one of two ways. The proceeds of the sale of the bonds might have been paid into the defendant's hands, and disbursed by it, in which event possibly, as the plaintiff claims, a duty might be inferred making it incumbent upon the defendant to see that the moneys realized from the sale of the bonds were paid out not only for the purposes, but in the order, in which the Oregon Pacific Railroad Company promised to apply them. But the Oregon Pacific Railroad Company had the right of delivery to it of the bonds in specie, in which event, as expressly stipulated in the mortgage, the defendant, the trust company, was not bound in any way to look to the application of the proceeds of the sale of the bonds. The words "any bonds," as used in the mortgage in connection with a delivery to the railroad company, must be construed as meaning all bonds from the indefinite and unlimited choice given the Oregon Company to require delivery to be made to it. Such bonds being so delivered, there could be no breach of the contract by the defendant if it received, prior to the delivery of the bonds to the Oregon Pacific Railroad Company, a statement of the purposes to which the proceeds of such bonds were to be applied. It is alleged in the complaint that immediately preceding each delivery of bonds by the defendant to the Oregon Pacific Railroad Company a statement in a certain form was given by it to the defendant, and upon a critical examination of the terms of the mortgage we are satisfied that, there being no obligation on the part of the defendant to look to the application of proceeds, such statement was sufficient to protect the defendant, and therefore that the plaintiff, while claiming in his complaint a breach of a particular requirement of the instrument, has, at the same time, shown a performance of it.

Our attention has been called to an opinion of the learned judge of the circuit court of the United States (Frismuth v. Trust Co. [C. C.] 95 Fed. 5-9) giving a general construction to the very mortgage now before us. We agree in the main with the view taken of the duties of the trustee as stated by that learned judge, but we do not construe particular provisions of the mortgage as he does. According to the condition of the mortgage under which these bonds

were issued, there was no duty of supervision of the trustee, such. as would require it to see to the appropriation of the money realized by their sale.   To import such an obligation is to contradict the provision of the mortgage.   Nor do we think that the statements delivered by the Oregon Pacific Railroad Company, and upon. which the bonds were issued, are so vague and indefinite in their declarations as to have required the trustee to refuse to deliver the bonds upon them.   It is provided in the mortgage that the bonds. were to be issued for purposes of the railroad company.   Some of the purposes are expressed; others are left general and indefinite.. By the fourth paragraph of the conditions "to be indorsed on bond," incorporated in the mortgage, the express purposes are first enumerated.   They include the payment of the $600,000 to secure the land grant, the grading and construction of the line of the road, the full and complete furnishing and equipment of the road and other specified objects, and afterwards the same clause contains the provision: "And also for such other and further purposes as may enable the party of the first part to engage in the other enterprises and purposes for which it has been so incorporated."   Each of the statements furnished to the defendant before it delivered any of the bonds specifically enumerates three of the legitimate purposes for which they might be required by the Oregon Pacific Railroad Company.   No particular form of statement was required, nor is there anything which demands a detailed specification of the purposes to which the bonds are to be applied, or an itemized or inventoried account of the. amounts so to be applied.   It is sufficient if the statements show that the proceeds of the bonds are to be applied to purposes sanctioned by the provisions of the mortgage.   Each of the statements. furnished declares that the purposes for which the bonds are to be. appropriated or used are the purchase of necessary materials, the construction of the line, and the discharge of the obligations of the. Oregon Company.   The generality of this description of the purposes for which the proceeds of the bonds are to be appropriated does not make the statement valueless, nor show that by its acceptance the defendant committed a breach of its obligation.   If the words, "and for other purposes of its organization," were not contained in the statement, we do not think a question could arise. The addition of those words does not invalidate the statement so as to make it a nullity, which is, in effect, the plaintiff's contention, for by reference to the fourth paragraph of the conditions, as before stated, the bonds were to be used by the Oregon Pacific Railroad Company for specific purposes, and, in the very words of the. statement, for other and further purposes connected with the organization of the corporation.   We therefore are of opinion that this action cannot be maintained upon the theory of the failure of the trust company to comply with the terms of the sealed instrument,. and that the judgment should be affirmed, with costs.

RUMSEY, INGRAHAM, and HATCH, JJ., concur.

VAN BRUNT, P. J.   I concur in the result of the opinion of the. court.   The execution of the agreement by the Farmers' Loan &.

Trust Company was limited, and the affixing of its corporate seal, the subscription by its president, and the attestation by its secretary were simply for the purpose of signifying its acceptance of the trust created by the agreement. If, therefore, there was any violation of the terms of the trust by the Farmers' Loan & Trust Company, it was simply a breach of duty as trustee.